**IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION**

| | |
|---|---|
| **4M DESIGN RESOURCES, INC.**           ) | |
|                                    ) | |
|                **Plaintiff**            ) | |
| **v.**                              ) | **Case No. 5:17-CV-5230-TLB** |
|                                      ) | |
| **YELL STEEL ENTERPRISE CO INC**          ) | |
|                                      ) | |
|               **Defendant.**          ) | |

**FIRST AMENDED COMPLAINT**

The Plaintiff, 4M Design Resources, Inc. ("4M"), comes before this Court and for its First Amended Complaint against Defendant, Yell Steel Enterprise Co. Inc., states:

**INTRODUCTION**

4M brings this action against Yell Steel Enterprise Co, Inc. ("YSE") for violation of Arkansas Code Annotated § 4-70-301 *et seq.*, or alternatively, for violation of California Civil Code § 1738.10 *et. seq.*; and, breach of contract, or in the alternative, unjust enrichment. YSE contracted 4M, through 4M's sole employee, Terri Miller, as a Sales Representative to solicit sales of its product to companies for resale. Until January 1, 2013, pursuant to the various written contracts between the parties, 4M performed the requested services.  After January 1, 2013, the parties' existing written agreement expired, and the parties agreed to a simple Compensation schedule in August 2013 to commence in 2014.  Since June 2015 and thereafter, YSE has failed to pay all outstanding commissions earned by and owed to 4M in accordance with the 2014 compensation schedule. In 2015, 4M terminated its representation of YSE and now brings this action to recover the outstanding commissions due and owing, and continuing, plus interest, attorney's fees, and costs.

1

## PARTIES

1.      Plaintiff, 4M, is and was at all times relevant to this action, a corporation registered in Arkansas and headquartered in Benton County, Arkansas.  Terri Miller is the sole shareholder and employee of 4M.

2.      Defendant, Yell Steel Enterprise Co Inc. ("YSE"), is and, at all times hereinafter mentioned, was a corporation registered in California and headquartered in Irvine, California.  At no time relevant hereto, nor as of the date of this filing, has Yell Steel Enterprise Co Inc. been authorized to conduct business in the State of Arkansas pursuant to Ark. Code Ann. § 4-27-1501 *et. seq.*  See Exhibit 1, Certificate of Non-Authority from Arkansas Secretary of State, the original of which is available for authentication.

## JURISDICTION AND VENUE

3.      The jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1332(a)(1) based upon diversity of citizenship, and the Court further has personal jurisdiction over the Defendant pursuant to Ark. Code Ann. § 4-70-304.

4.      Alternatively, the Court has jurisdiction over the Plaintiff's claims under California law in that there exists diversity of jurisdiction pursuant to 28 U.S.C. § 1332(a)(1) and the Plaintiff is based in Arkansas and the primary transactions that give rise to the complaints herein occurred in Arkansas.

5.      The Defendant may attempt to assert that a valid forum selection clause exists and that the United States Court Federal Court in California is the proper venue under the holding of *Atlantic Marine Construction Co. v. U.S. District Court,* ___ U.S. ___, 134 S.Ct. 568, 583, 187 L.Ed.2d 487 (2013). However, at the time of the termination of the relationship, there existed no written contract between the parties and no valid forum selection agreement between them, and thus venue is proper herein as stated below.

6.      Venue is proper in this Court under 28 U.S.C. §1391(b)(2) and (b)(3), and the unlawful practices were committed primarily within Arkansas, in the Western District thereof.

## STATEMENT OF FACTS

7.    YSE does not have a permanent or fixed place of business in Arkansas in that it is not maintain a certificate of authority to conduct business in Arkansas in accordance with Ark. Code Ann. § 4-27-1501 *et. Seq.*, has no permanency in Arkansas, and is not domiciled in Arkansas.  See Exhibit 1.

8.    Instead, upon information and belief maintains a leased office space in Bentonville, Arkansas with limited operations.

9.    On information, YSE receives all Walmart purchase orders, manages distribution of orders, and conducts production planning out of its California office.

10.    The local Bentonville office maintains a single Sales Representative employee, a retail link analyst, and a part time graphic designer congregating to service the Walmart account for YSE.

11.    YSE regularly conducts business in the State of Arkansas as such conduct is defined by Ark. Code Ann. § 4-27-1501 *et. Seq.*  For example, among other things, YSE has a lease on real property for a purpose other than owning or maintaining the lease as its sole purpose.

12.    YSE manufactures, produces, imports, or distributes product(s) for sale to customers who purchase the product for resale.

13.    In 2008, YSE sought out 4M to solicit sales for YSE's product(s) on its behalf from Wal-Mart Stores, Inc. its subsidiaries and affiliates for the purpose of obtaining orders on its behalf from Wal-Mart with the intent to deliver the goods to consumers at Wal-Mart US, including those in California and Arkansas.

14.    In 2008, YSE entered into a services contract ("2008 Contract") with 4M in which 4M was to solicit on behalf of YSE orders for the purchase at wholesale of YSE's product for placement in Wal-Mart US, including those in California and Arkansas.  An unsigned version of

the 2008 Contract is attached hereto as Exhibit 2. Upon information and belief, no party maintains a record of the signed version of the 2008 Contract.

15.    YSE entered into the 2008 Contract with 4M agreeing to pay 4M pursuant to a commission-based payment schedule.

16.    Pursuant to the terms of the 2008 Contract the initial term of the Agreement was to be two (2) years from the Effective Date. Upon expiration of the initial or an extended term of the Agreement the Agreement was to be automatically be renewed for additional terms of two (2) years each.

17.    In January 2011, YSE entered into a new, and not renewed, version of the services contract with substantially different terms of compensation (among other varying terms) than that of the 2008 Contract ("2011 Contract").

18.    This new 2011 Contract with 4M required 4M to solicit from Wal-Mart and Sam's Club, on behalf of YSE, orders for the purchase at wholesale of YSE's product. An unsigned version of the 2011 Contract is attached hereto as Exhibit 3. Upon information and belief, no party maintains a record of the signed version of the 2011 Contract.

19.    As opposed to the automatic renewal of the prior 2008 Contract, the 2011 Contract's "Term" was defined as follows: "[u]nless otherwise terminated pursuant to the terms of this Agreement, the initial term of this Agreement shall be two (2) years from the Effective Date. Upon expiration of the initial or an extended term of this Agreement, unless otherwise terminated pursuant to the terms of this Agreement, this Agreement shall be **re-negotiated for an additional 2 years**" (emphasis added).

20.    The 2011 contract expired on December 31, 2012.

21.    From that point, until then end of 2013, the parties used the 2011 Contract commission schedule without executing any renegotiated, renewed, or extended agreement guiding the payments to 4M by YSE.

4

22.     At no time after the expiration of the 2011 Contract on December 31, 2012, did the parties "re-negotiate", "renew", or "extend" the terms of the 2011 Contract for an additional two years in writing.

23.     Section 7.9 of the 2011 Contract required that "[n]o amendment or addition to, or modification of, any provision contained in this Agreement shall be effective unless fully set forth in writing by all of the Parties hereto."

24.     At no time were the terms of the 2011 Contract added to, amended, or renewed in writing by any Party thereto.

25.     The 2011 Contract expired on December 31, 2012.

26.     In August 2013, YSE unilaterally set forth a new compensation payment schedule by which commissions would be paid in 2014 and 2015.  No written agreement setting forth any additional terms was executed in 2013 or thereafter.  The email setting forth a new budget and commission schedule along with its attached spreadsheet is attached hereto as Exhibit 4.

27.     Until the events that gave rise to this cause of action occurred, 4M continued to sell to Wal-Mart and Sam's Club on behalf of YSE and received orders for products, which would be distributed to stores in the United States, including California, at least through 2016, and which are believed to continue to this date.

28.     In April of 2015, contrary to the terms of any prior agreement, YSE demanded that 4M provide the totality of its services exclusively to YSE as opposed to 4M only having limited its sales of YSE or apparel related products as had been the agreement in 2008 and 2011.

29.     4M declined YSE's request for total exclusivity of its services and thereafter terminated the relationship.

30.     As of the date of termination, 4M had sold product and received order commitments through the calendar year 2016.

31.     On information and belief, the products sold as of the date of termination were continuing, year-round products and are still being sold to Walmart.

5

32.    On information and belief, that product continues to be placed in California stores as a result of 4M's procurement of the buyer commitment to these year-round programs.

33.    Pursuant to the 2014 Commission schedule attached as Exhibit 4, the commission percentage from the prior agreements changed based on a sliding scale per volume of orders, with a draw to be paid monthly irrespective of the amount of products sold.

34.    4M is not and has never been an "employee" of YSE.

35.    4M has not received, nor has ever been eligible or entitled to bonuses from YSE.

36.    The use of the term "Bonus %" and reference to "2012 Salary" of "Base" in the 2014 commission schedule spreadsheet was equivalent in all respects to prior commissions in the 2008 and 2011 Contracts.

37.    In July of 2015, YSE refused to pay the commissions to which 4M is entitled and continues to do so to date.

38.    At the time of the termination of the agreement, 4M had secured order commitments from Walmart for styles of products shipped year-round to Walmart Stores for the calendar years 2015 and 2016.

39.    Upon information and belief, orders placed by 4M are still being fulfilled.

40.    4M is entitled to the commissions from all gross sales prior to termination and shipped post-termination as well as on orders for styles, the procurement of which 4M was responsible, that were sold to Wal-Mart and Sam's Club by 4M and continue to generate orders for YSE.

41.    After demand, YSE has failed to acknowledge 4M's owed commissions nor pay the commissions actually owed based upon gross sales placed or orders shipped.

42.    The amount of commissions that are alleged to be owed as of this date are believed to be at least Three Hundred Twenty-Six Thousand Dollars and 00/100 ($326,000.00).

## COUNT I: WILLFUL FAILURE TO PAY COMMISSIONS IN VIOLATION OF ARKANSAS CODE ANNOTATED § 4-70-301 ET SEQ.

43.    Upon application of Arkansas law, the relationship of the parties is governed by Ark. Code Ann. 4-70-301 *et. seq.*

44.    YSE is a "Principal" as defined by Ark. Code Ann. § 4-70-301 in that it had no "fixed or permanent place of business in Arkansas" as evidence by its lack of authority to conduct business in Arkansas, among other factors.

45.    4M, by and through Terri Miller, is a "Sales Representative" as defined.

46.    Ark. Code Ann. § 4-70-302 requires a contract between a Principal and Sales Representative to be in writing and set forth the method by which the Sales Representative's commission is to be computed and paid.

47.    The 2014 payment schedule does not set forth terms sufficient to constitute a contract in writing.  The 2008 and 2011 agreements, by their own terms, expired on December 31, 2009 and December 31, 2012 respectively.

48.    Ark Code Ann. § 4-70-303 provides for commission payment to be paid within thirty (30) days after the date of termination of a compensation agreement that is not in writing.

49.    The laws of Arkansas govern the relationship between Plaintiff and Defendant and any waiver of this subchapter is void by Ark. Code Ann. § 4-70-305.

50.    Ark. Code Ann. §4-70-306 states "a Principal who fails to comply with a provision of a contract under § 4-70-302 relating to payment of a commission or fails to pay a commission as required by § 4-70-303 is liable to the Sales Representative in a civil action for three (3) times the damages sustained by the Sales Representative."

51.    YSE has failed and refused to pay commissions due to 4M pursuant to the compensation schedule.

52.    4M has suffered damages as a result of YSE's willful failure to pay commissions due and owing in an amount to be determined at trial, but no less than Three Hundred Twenty-

Six Thousand Dollars and 00/100 ($326,000.00) times three pursuant to Ark. Code Ann. §4-70-306.

### COUNT II: WILLFUL FAILURE TO PAY COMMISSIONS IN VIOLATION OF CALIFORNIA CIVIL CODE § 1738.10 ET SEQ.

53.    As an alternative, should the Court apply California law, the relationship of the parties is governed by California Civil Code §1738.10 *et. seq.*

54.    YSE is a "distributor" as defined by California Civil Code § 1738.12(a) in that it is an organization engaged in the business of importing a tangible product intended for resale to or use by the consumers of California.

55.    4M, by and through Terri Miller, was a "wholesale sales representative" as defined in California Civil Code § 1738.12(a) in that it contracted with YSE for the purpose of soliciting wholesale orders from Wal-Mart for placement in US stores, including orders for California, and is compensated in whole or in part by commission.

56.    California Civil Code § 1738.13(a) requires a contract between a manufacturer or distributor and wholesale sales representative who solicits wholesale orders at least partially within California to be in writing and set forth the method by which the sale's representative's commission is to be computed and paid, among other requirements.

57.    4M, by its territory assignment of 4M to Wal-Mart and Sam's Club, each fulfilling orders placed with YSE to its stores in California, solicited orders at least partially within the state of California within the meaning of California Civil Code § 1738.13.

58.    By its failure to "re-negotiate" the 2011 agreement between YSE and 4M, YSE failed to enter into a written agreement setting forth the terms required of it by California Civil Code § 1738.13, and willfully failed to include:

a.    The rate and method by which the commission is computed.

b.    The time when commissions will be paid.

c.    The territory assigned to the sales representative.

d.    All exceptions to the assigned territory and customers therein.

e.    What chargebacks will be made against the commissions, if any.

59.    YSE further failed to provide to 4M with a signed copy of a written contract and to have 4M sign a receipt acknowledging receipt of the signed contract in violation of California Civil Code § 1738.13 and 1738.14.

60.    California Civil Code §1738.15 states: "[a] manufacturer…or distributor who willfully fails to enter into a written contract as required by this chapter or willfully fails to pay commissions as provided in the written contract shall be liable to the sales representative in a civil action for treble the damages proved at trial."

61.    YSE failed to enter into a written contract as required by California Civil Code §1738.13 and refused to pay commissions due to 4M pursuant to the agreed compensation schedule.

62.    4M has suffered damages as a result of YSE's willful failure to pay commissions due and owing in an amount to be determined at trial, but no less than Three Hundred Twenty-Six Thousand Dollars and 00/100 ($326,000.00) times three pursuant to California Civil Code §1738.15.

**COUNT II: BREACH OF CONTRACT**

63.    Pursuant to the terms of the compensation schedule, the Defendant was to pay 4M sales commissions owed to it for sales generated for YSE as it had in the past.

64.    The Defendant has failed and refused to pay said commissions.

65.    Such failures and refusals constitute a breach of agreement as it is contrary to the terms of the compensation agreement in the event that entitled 4M commissions owed to it for sales generated for YSE.

66.    The agreement was based on the compensation schedule attached as Exhibit 4.

67.    Due to Defendant's breach, 4M has suffered damages in an amount to be determined at trial, but no less than Three Hundred Twenty-Six Thousand Dollars and 00/100 ($326,000.00), plus interest.

## COUNT III: UNJUST ENRICHMENT

68.    4M provided services, at the request of the Defendant, such services not yet paid, the fair and reasonable value of which is an amount to be determined at trial but no less than Three Hundred Twenty-Six Thousand Dollars and 00/100 ($326,000.00), plus interest.

69.    Defendant has received the benefits of 4M's services without full compensation, all to the Defendant's unjust enrichment.

70.    Defendant has been unjustly enriched, at the expense of 4M, in an amount to be determined at trial, but no less than Three Hundred Twenty-Six Thousand Dollars and 00/100 ($326,000.00), plus interest.

## DAMAGES

71.    Plaintiff has suffered damages in an amount in excess of the minimal amount for Federal Diversity Jurisdiction ($75,000) for compensation due and owing.

72.    Plaintiff seeks treble damages up to the limits permitted by law for Defendant's willful failure to pay commissions, or its willful failure to execute a written contract for commissions after 2012.

73.    Plaintiff reserves the right to amend and supplement this Complaint should discovery or the applicable facts so warrant.

WHEREFORE, Plaintiff respectfully for judgment on its behalf awarding it:

   a.  A jury trial;

   b.  Damages for commissions due and owing in an amount to be determined at trial, but no less than three times Three Hundred Twenty-Six Thousand Dollars and 00/100 ($326,000.00), or Nine Hundred Seventy -Eight Thousand Dollars and 00/100 ($978,000.00) pursuant to Ark. Code Ann. § 4-70-306;

10

c.  Alternatively, damages for commissions due and owing in an amount to be determined at trial, but no less than three times Three Hundred Twenty-Six Thousand Dollars and 00/100 ($326,000.00), or One Million One Hundred Eighty-Eight Thousand Dollars and 00/100 ($1,188,000.00) pursuant to California Civil Code § 1738.10 *et. seq.*

d.  Alternatively, 4m prays for damages for breach of contract;

e.  Alternatively, 4m prays for damages for unjust enrichment;

f.  4M prays for attorneys' fees and costs pursuant to Ark. Code Ann. § 4-70-306, California Civil Code § 1738.16, or any other applicable statute;

g.  Prejudgment interest; and

h.  All other relief to which it may be entitled.

Respectfully submitted,

4M Design Resources, Inc.

/s/George M. Rozzell IV_____
George M. Rozzell IV, ID #2008032
Keith, Miller, Butler, Schneider & Pawlik PLLC
224 S. 2nd St., Rogers, AR 72756
p: 479-621-0006
f: 479-631-6890
grozzell@arkattorneys.com

## CERTIFICATE OF SERVICE

I, George Rozzell, hereby certify that on the 31st day of January 2018, I electronically filed the foregoing with the Clerk of the Court using the EM/ECF system, which shall send notification of such filing to all parties of record with ECF.

/s/ George M. Rozzell IV_____
George M. Rozzell IV

11