IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

4M DESIGN RESOURCES, INC.                                              PLAINTIFF

V.                        CASE No. 5:17-CV-05230

YELL STEEL ENTERPRISE CO., INC.                                       DEFENDANT

## MEMORANDUM OPINION AND ORDER

Currently before the Court are Defendant and Counterclaimant Yell Steel Enterprise Co., Inc.'s ("Yell Steel") Motion to Transfer (Doc. 21) and Brief in Support (Doc. 22), Plaintiff 4M Design Resources, Inc.'s ("4M") Response in Opposition (Doc. 25), and Yell Steel's Reply (Doc. 29). The Court held a hearing on the Motion on March 26, 2018, and the parties presented oral argument. Now having considered the argument and briefing, the Court **GRANTS** the Motion to Transfer (Doc. 21) for the reasons set forth in the following Opinion.

## I. BACKGROUND

4M is an Arkansas corporation with a principal place of business in Bentonville, Arkansas. Terri Miller is the sole shareholder and employee of 4M. Yell Steel is a California corporation that produces athletic apparel and related items and maintains a principal place of business in Irvine, California, and an office in Bentonville, Arkansas. In September of 2008, Yell Steel entered into a contract with Ms. Miller, through her company 4M, and engaged her to solicit sales of Yell Steel's merchandise to Wal-Mart Stores, Inc. ("Walmart") and Walmart's subsidiaries and affiliates. The parties agree that Ms. Miller was Yell Steel's sales representative and was paid for her services through a commission-based payment schedule.

1

The parties' 2008 Agreement (Doc. 13-2) was intended to last for a period of two years, with a provision that the term would be automatically renewed every two years for another two-year term, provided that the parties did not otherwise terminate the Agreement. Yell Steel agreed to advance 4M $5,000 per month, which would serve as a draw against any commission earned during that month. Yell Steel also agreed to pay 4M a 1.25% commission on "all sales and subsequent shipments made in any calendar year," provided that 4M procured over $13,000,000 in sales. *Id.* at 2. This additional commission was conditioned on 4M "securing a minimum of thirteen million dollars ($13,000,000US) for parent company, Taiwan based Yell Steel Group (YSG)." *Id.* The parties immediately began performing under the terms of the 2008 Agreement, even though they never signed the Agreement.

On January 1, 2011, the parties entered into a new contract that was much the same as the old one, with the exception being that the 2011 Agreement increased 4M's draw to $8,000 per month and lowered 4M's commission rate to 0.85% "on all sales and subsequent shipments made in any calendar year." (Doc. 13-3, p. 2). In addition, the 2011 Agreement no longer provided for automatic renewal, but instead contemplated that the contract would be "re-negotiated" every two years. *Id.* at 1. The 2011 Agreement was also unsigned, but the parties began performing under its terms immediately.

On August 6, 2013, the president of Yell Steel, Stuart Solkow, sent an email to Ms. Miller at 4M, with the subject line: "2014/ 15 Budgets and Compensation." (Doc. 13-4, pp. 1). The body of the email read: "Here you go. Please call to discuss." The email attached a one-page spreadsheet listing a revised compensation/commission plan

for 4M based on projected sales, and a projected budget for expenses related to Yell Steel's Bentonville office and staff, which Ms. Miller managed. *See id.* at 2. The parties continued performing under the terms of their 2011 Agreement, though the compensation structure had changed.

4M asserts that at some point Yell Steel stopped paying 4M its due commissions. Then, in March of 2015, 4M unilaterally terminated the parties' business relationship. On November 9, 2017, 4M filed the instant lawsuit to recover allegedly unpaid commissions from 2015 and 2016. On February 16, 2018, Yell Steel filed its Answer to 4M's Amended Complaint, along with a Counterclaim for breach of contract, fraud, and tortious interference, and a Motion to Transfer the case to the Central District of California pursuant to a forum-selection clause from the 2011 Agreement. The forum-selection clause states the following:

> The parties agree that in connection with any claims or contests relating to this Agreement, such claims or contests shall be brought in the Federal District Court of the United States in the State of California, County of Los Angeles.

(Doc. 13-3, p. 3).

Although 4M admits that the 2008 and 2011 Agreements contained the same forum-selection clause, 4M believes that the 2011 Agreement technically expired in December of 2012, and that Mr. Solkow's August 2013 email created a brand new contract between the parties that failed to reference and incorporate any of the terms from the 2011 Agreement—including the forum-selection clause. In the alternative, 4M argues that if the Court determines that the forum-selection clause is legally valid, the Arkansas Sales Representative Commission Act ("ASRCA") applies to the claims at issue in this case, and the strong public policy supporting the ASRCA favors laying

venue for all ASRCA disputes in Arkansas and voiding forum-selection clauses that purport to lay venue elsewhere.

For its part, Yell Steel believes that Mr. Solkow's email only modified the compensation/commission plan for 4M in 2013 and did not affect the other provisions of the 2011 Agreement, including the forum-selection clause that remained in effect by virtue of the parties' continued performance. As for the ASRCA, Yell Steel points out that the statute only covers sales-commission agreements between those defined as "sales representatives" and those defined as "principals." Yell Steel contends that it does not qualify as a principal under the plain language of the ASRCA, since a principal is defined as one who "[d]oes *not* have a permanent or fixed place of business" in Arkansas, Ark. Code Ann. § 4-70-301(2)(A) (emphasis added), and the parties do not dispute the fact that Yell Steel staffs a physical office space located in Bentonville, Arkansas.

In the following discussion, the Court will first consider whether the forum-selection clause is legally valid. Next, the Court will consider whether the forum-selection clause is enforceable here, in light of the ASRCA's strong public policy in favor of litigating certain sales-commission disputes in Arkansas.[1]

## II. LEGAL STANDARD

Whether a forum-selection clause is valid is a procedural question that is governed by federal law. *Bright Harvest Sweet Potato Co. v. H.J. Heinz Co.*, 2013 WL 2458685, at *2 (W.D. Ark. June 6, 2013). "When the parties have agreed to a valid

---

[1] Yell Steel also argues that the ASRCA is unconstitutional. The Court finds that it need not reach this argument in view of its finding that the ASRCA does not apply to the parties' sales-commission agreement, due to the fact that Yell Steel does not qualify as a "principal," as that term is defined.

forum-selection clause," the district court should transfer the case to the pre-negotiated jurisdiction. *Atl. Marine Const. Co.. v. U.S. Dist. Court for the W. Dist. of Tex.*, 571 U.S. 49, 62 (2013). Only in narrow, "extraordinary circumstances unrelated to the convenience of the parties should a [motion to transfer pursuant to] § 1404(a) . . . be denied." *Id.*; *see also M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 15 (1972) (forum-selection clauses are prima facie valid, and "the forum clause should control absent a strong showing that it should be set aside"). The Eighth Circuit has reaffirmed this holding. *See M.B. Rests., Inc. v. CKE Rests., Inc.*, 183 F.3d 750, 752 (8th Cir. 1999) (citing *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 590-95 (1991)) ("[Forum-selection clauses] are enforceable unless they would actually deprive the opposing party of [its] fair day in court."). The party challenging a forum-selection clause bears a "heavy burden of proof" when trying to avoid its enforcement. *Servewell Plumbing, LLC v. Fed. Ins. Co.*, 439 F.3d 786, 789 (8th Cir. 2006) (citing *Bremen*, 407 U.S. at 17).

### III. DISCUSSION

#### A. Validity of the Forum-Selection Clause

4M believes the 2011 Agreement's forum-selection clause, which states that the parties agree to litigate disputes arising under the Agreement in the United States District Court for the Central District of California, is invalid. First, 4M observes that the 2011 Agreement formally terminated on December 31, 2012, since the parties failed to renegotiate it by that date, and the Agreement had specified that "[u]pon expiration of the initial or an extended term of this Agreement . . . this Agreement shall be re-negotiated for an additional 2 years." (Doc. 13-3, p. 1). Yet the parties do not

5

dispute that they continued doing business with one another after December 31, 2012, apparently without any material change in practices. On August 6, 2013, Yell Steel's president emailed Ms. Miller at 4M and attached a proposed new compensation/commission schedule. *See* Doc. 13-4. Thereafter, the parties continued doing business as usual, except that 4M's compensation structure changed. In 4M's view, the compensation schedule constituted the *only* contractual terms between the parties from August 2013 going forward. As best the Court can gather, it is 4M's belief that even though the parties' course of conduct after December 31, 2012 manifested adherence to the terms of their 2011 Agreement, none of the Agreement's terms, including the forum-selection clause, remained in force after December of 2012.

The Court rejects 4M's view of the 2011 Agreement. The 2013 email did not constitute a brand new contract between the parties: it was simply a spreadsheet containing compensation rates. The parties continued their performance under the terms of the 2011 Agreement from December 2011 until August 2013, and after the new compensation rates were agreed to, they simply continued their prior course of performance, except that they now agreed on a new compensation structure that was more favorable to 4M. Although 4M is correct that the spreadsheet "d[id] not address the subject matter of forum selection or choice of law, nor d[id] it reflect mutual agreement to the continuation or incorporation of any prior term to which they had agreed," (Doc. 25, p. 4), no such manifest agreement was necessary, as the parties' performance under the 2011 Agreement had continued without any material change from 2011 onward.

According to the Arkansas Supreme Court, where "an agreement expires by its own terms, if without more the parties continue to perform as before, an implication arises that they have mutually assented to a new contract containing the same provisions as the old, and the existence of the new contract is determined by an 'objective' test, i.e., whether a reasonable man would think, from the actions, that they intended to make a new binding agreement." *Steed v. Busby*, 268 Ark. 1, 7 (1980). "In such a case, when the parties continue to do business together, their conduct may permit, or even constrain, a finding that they impliedly agree that their rights and obligations should continue to be measured as provided in the old contract." *Id.* In the instant matter, the parties implied by their continued performance of the 2011 Agreement in 2012, 2013, 2014, and 2015 that its terms remained in effect, with the only exception being the compensation amounts that were modified by mutual agreement in 2013. California law as to this point of law is the same as Arkansas law. *See Dunham, Carrigan & Hayden Co. v. Thermoid Rubber Co.*, 84 Cal. App. 669, 673 (1927). Accordingly, the Court finds that the forum-selection clause from the 2011 Agreement was valid at the time 4M terminated the parties' business relationship.

### B. Effect of the ASRCA

Under the ASRCA, "[a] principal who fails to comply with a provision of a contract under § 4-70-302 relating to payment of a commission or fails to pay a commission as required by § 4-70-303 is liable to the sales representative in a civil action for three (3) times the damages sustained by the sales representative, plus reasonable attorney's fees and costs." Ark. Code Ann. § 4-70-306. Importantly, the ASRCA only holds a "principal" liable for damages, and a principal is one who:

(A) Does not have a permanent or fixed place of business in this state;

(B) Manufactures, produces, imports, or distributes a product for sale to customers who purchase the product for resale;

(C) Uses a sales representative to solicit orders for the product; and

(D) Compensates the sales representative in whole or in part by commission . . . .

Ark. Code Ann. § 4-70-301(2).

Here, Yell Steel argues that it should be exempt from the ASRCA because it has a permanent or fixed place of business in the state of Arkansas, and thus is not a principal. This issue is important to the Court's assessment of proper venue in this case, as the ASRCA explicitly provides that in a sales-commission agreement between a "principal" and a "sales representative," "[a] provision in the contract establishing venue for an action arising under the contract in a state other than [Arkansas] is void." Ark. Code Ann. § 4-70-302(c).

The parties have not pointed the Court to any legislative history or case law that interprets more specifically what would qualify as a "permanent or fixed place of business" under the ASRCA. Perhaps, if a company only maintained a post office box in Arkansas, this would not qualify as a fixed place of business. But in Yell Steel's case, it maintains a physical office space governed by a lease, see Doc. 22-8, with a staff of employees paid by Yell Steel. The office has a fixed address and telephone number. See Doc. 22-1.

In the absence of legal guidance to the contrary, the Court finds that Yell Steel's office in Bentonville qualifies as a "permanent or fixed place of business," and Yell Steel is not a "principal," as defined by the ASRCA. The forum-selection clause favoring

venue in the Central District of California is therefore to be given full effect, and the case will be transferred to California for further disposition.

## IV. CONCLUSION

For the foregoing reasons, Defendant Yell Steel Enterprise Co., Inc.'s Motion to Transfer (Doc. 21) is **GRANTED**. The Clerk of Court is **DIRECTED** to immediately transfer this case to the United States District Court for the Central District of California.

**IT IS SO ORDERED** on this 29th day of May, 2018.

/s/ Timothy L. Brooks
TIMOTHY L. BROOKS
UNITED STATES DISTRICT JUDGE